# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# 5:06cv128

| | |
|---|---|
| MARGIE RUSSELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| Vs. ) | MEMORANDUM |
| ) | OF DECISION |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the court pursuant to 28, United States Code, Section 636(c) and upon plaintiff's Motion for Summary Judgment and the Commissioner's Motion for Summary Judgment. Having carefully considered such motions and reviewed the pleadings, the court enters the following findings and conclusions. A judgment reflecting such conclusions is being entered simultaneously herewith.

The court notes from the outset two errors in the pleadings: first, in plaintiff's Memorandum in Support of her Motion for Summary (#11), the section entitled "Procedural History" appears to be drawn from a case other than the one before the court; and second, the certificate of service attached to defendant's Motion for Summary Judgment (#12) as well as the certificate attached to the Commissioner's

Memorandum in Support (#13) show service of an attorney and firm who have not made an appearance in this matter. Inasmuch as it appears from the ECF receipt that plaintiff's counsel actually received the defendant's motion and brief and that the plaintiff's "Procedural History" does not bear on the merits, such errors are harmless and are simply noted so as to correct the public record.

## FINDINGS AND CONCLUSIONS

**I.  Administrative History**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits. Plaintiff's claim was denied both initially and on reconsideration; thereafter, plaintiff requested and was granted a hearing before an administrative law judge ("ALJ"). After conducting a hearing, the ALJ issued a decision which was unfavorable to plaintiff, from which plaintiff appealed to the Appeals Council. Plaintiff's request for review was denied and the ALJ's decision affirmed by the Appeals Council, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, plaintiff timely filed this action.

**II.  Factual Background**

It appearing that the ALJ's findings of fact are supported by substantial evidence, the undersigned adopts and incorporates such findings herein as if fully set forth. Such findings are referenced in the substantive discussion which follows.

**III.    Standard of Review**

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  Review by a federal court is not *de novo*, Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, supra.  Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence.  Hays v. Sullivan, supra.

**IV.    Standard for Evaluating Allegations of Pain and Other Subjective Complaints**

Plaintiff's claim for benefits includes allegations of pain or other subjective complaints. The correct standard and method for evaluating claims of pain and other subjective symptoms in the Fourth Circuit has developed from the Court of Appeals' decision in Hyatt v. Sullivan, 899 F.2d 329 (4th Cir. 1990)(Hyatt III), which held that " [b]ecause pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of

pain is not determinative." Id., at 336. A two-step process for evaluating subjective complaint was developed by the appellate court in Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996), and is now reflected in Social Security Ruling 96-7p.[1]

Craig requires that the Commissioner apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. See 20 C.F.R. § 416.929. In conducting the two-step Craig analysis, Step One requires the ALJ to determine whether there is "objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant" Craig, at 594. Once a medical impairment is identified by the ALJ in Step One that could reasonably be expected to produce the pain or other subjective complaint asserted, the intensity and persistence of that pain is evaluated by the ALJ along with the extent to which such pain or other subjective complaint limits claimant's ability to engage in work. Id.; see also 20 C.F.R. § 416.929(c).

---

[1] "The purpose of this Ruling is to clarify when the evaluation of symptoms, including pain, under 20 CFR 404.1529 and 416.929 requires a finding about the credibility of an individual's statements about pain or other symptom(s) and its functional effects; to explain the factors to be considered in assessing the credibility of the individual's statements about symptoms; and to state the importance of explaining the reasons for the finding about the credibility of the individual's statements in the disability determination or decision." S.S.R. 96-7p (statement of purpose).

Once the ALJ progresses to Step Two, he or she considers the following factors, which include: (1) plaintiff's testimony and other statements concerning pain or other subjective complaints; (2) plaintiff's medical history; (3) any laboratory findings; (4) objective medical evidence of pain if any; (5) the plaintiff's activities of daily living; and (6) any course of treatment the plaintiff has undergone to alleviate pain. Craig, supra, at 595.

## V. Substantial Evidence

### A. Introduction

The court has read the transcript of plaintiff's administrative hearing, closely read the decision of the ALJ, and reviewed the extensive exhibits contained in the administrative record. The issue is not whether a court might have reached a different conclusion had he been presented with the same testimony and evidentiary materials, but whether the decision of the administrative law judge is supported by substantial evidence. The undersigned finds that it is.

### B. Sequential Evaluation

A five-step process, known as "sequential" review, is used by the Commissioner in determining whether a Social Security claimant is disabled. The Commissioner evaluates a disability claim under Title II pursuant to the following five-step analysis:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings;

2. An individual who does not have a "severe impairment" will not be found to be disabled;

3. If an individual is not working and is suffering from a severe impairment that meets the durational requirement and that "meets or equals a listed impairment in Appendix 1" of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors;

4. If, upon determining residual functional capacity, the Commissioner finds that an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made;

5. If an individual's residual functional capacity precludes the performance of past work, other factors including age, education, and past work experience, must be considered to determine if other work can be performed.

20 C.F.R. 404.1520(b)-(f). In this case, the Commissioner determined plaintiff's claim at the fifth step of the sequential evaluation process.

**C. The Administrative Decision**

Having found that plaintiff did not have the residual functional capacity ("RFC") to return to her prior work as a furniture packer, furniture inspector, and as a case wrapper, the ALJ determined at the fifth step of the sequential evaluation process that plaintiff had the RFC to perform a significant range of light work. A.R., at 18. The ALJ further found that plaintiff's ability to perform all or substantially all

of the requirements of light work was impeded by additional exertional and/or non-exertional limitations, A.R., at 19, and therefore employed a Vocational Expert ("V.E.") to assist the ALJ in determining whether there were a significant number of jobs plaintiff could perform given the residual functional capacity as determined by the ALJ and other vocational factors. Id. The VE opined based on the ALJ's hypothetical that plaintiff could perform the job of cashier or the job of inspector, both of which are jobs which exist in substantial numbers in both the state and national economies. Id. Informed by the opinions of the VE, the ALJ determined that plaintiff was not disabled because based on her age, educational background, work experience, and RFC, plaintiff is capable of making a vocational adjustment to work that exists in significant numbers in the national economy. Id.

**D. Discussion**

**1. Plaintiff's Assignments of Error**

Plaintiff has made the following assignments of error:

Whether the Administrative Law Judge erred in failing to specify in the residual functional capacity assessment the maximum amount of Plaintiff's capacity to sit, stand, and walk, as well as the frequency of Plaintiff's need to alternate sitting and standing?

Plaintiff's Motion for Summary Judgment, at 1.

**2. Discussion of Assignment of Error**

The crux of plaintiff's argument is that the ALJ failed to specify in her RFC assessment (1) the maximum time plaintiff could sit, stand, and walk in a workday, and (2) the frequency with which plaintiff needed to alternate between sitting and standing. Plaintiff argues that SSR 96-8p requires an ALJ to describe the maximum amount of each work related activity the plaintiff can perform based on the evidence, and that the same ruling requires the ALJ to specify the frequency with which the plaintiff needs to alternate between sitting and standing. Plaintiff acknowledges that SSR 96-8p is directed specifically at the ability to perform sedentary work, rather than the light work found by the ALJ in this case. Acknowledging as much, plaintiff argues, however, that if SSR 83-12 and 96-8p are applied together, the rulings create a requirement that the ALJ specify in the RFC determination the maximum amount of sitting, standing and walking that a claimant can perform as well as the specific frequency that she needs to alternate between standing and sitting.

In this case, the ALJ, in determining that plaintiff could perform light work, made the following RFC determination:

> the undersigned finds the claimant retains the residual functional capacity to do light exertional level work with a sit stand option. Additionally, the claimant is limited to frequent handling and fingering bilaterally, only occasional bending at the waist, crouching, kneeling,

crawling, pushing or pulling bilaterally with the lower extremities, along with the ability to climb stairs or ramps limited to building access.

A.R., at 18. Such RFC determination finds substantial support in the evidence of record inasmuch as it is consistent with the conclusions of Dr. Elizabeth Hoyt, a state agency medical consultant, who reviewed plaintiff's medical records. A.R., at 154-162. The ALJ is solely responsible for determining RFC of a claimant. 20 C.F.R. § 404.1546(c). In determining RFC, the ALJ must consider the functional limitations and restrictions resulting from the claimant's medically determinable impairments. S.S.R. 96-8p. Inasmuch as RFC is determined at the fourth step of the sequential evaluation process, the burden is on the claimant to establish that he or she suffers from a physical or mental impairment which limits functional capacity. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The ALJ's determination is supported by substantial evidence. On March 25, 2003, Michael Blau, a Physician's Assistant to plaintiff's physician, observed that plaintiff's leg pain was completely resolved, her strength was excellent and she was taking Advil. A.R., at 186. Dr. Geissele, plaintiff's treating physician, determined on April 16, 2003, that plaintiff's lower extremity motor and sensory examinations were normal, her straight leg raising was generally negative, and she had only mild diffuse joint tenderness in her knee with no evidence of effusion or notable irritability. A.R., at 166. On June 19, 2003, Dr.

Geissele also found that plaintiff's discomfort while standing had gradually improved, her lower extremity motor and sensory examinations were normal, and her straight leg raising was negative on the right and on the left and did not cause any severe symptoms. A.R., at 165. The consulting physician observed on September 27, 2003 that Plaintiff was in no apparent distress, her *Romberg* test and gait were normal, she did not require an assistive device, her sensation was grossly intact and her extremity strength was essentially full except for a limitation in her left lower extremity. A.R., at 139-40. The doctor also concluded that plaintiff had only moderate limitations and was able to walk one hundred feet. A.R., at 141. On November 5, 2003, Carson Finney, a Physician's Assistant to plaintiff's treating physician, observed that plaintiff was in no acute distress, she had no sensory deficits, her extension was generally full, she could flex to one hundred twenty degrees, and she had excellent flexion strength. A.R., at 163. Dr. Hoyt determined that plaintiff could lift ten pounds frequently and twenty pounds occasionally, stand/walk and sit for six hours each in an eight hour day, engage in occasional postural activities and push and pull occasionally with the lower extremities bilaterally. A.R., at 155-56.

Plaintiff first argues that the ALJ erred in failing to specify the maximum time plaintiff could sit, stand, and walk in a workday. This argument is predicated on plaintiff's mistaken assumption that because she required a sit/stand option, she was

precluded from performing jobs within the light occupational base. Pl. Br., at 4-6. A sit/stand option does not, however, prevent a plaintiff from being considered capable of performing light work. Pursuant to SSR 83-12, if a claimant needs to alternate between sitting and standing, then a VE should be consulted to clarify the implications to the occupational base. As is clear from both the transcript of the hearing and the decision of the ALJ, a VE was employed by the Commissioner. The VE proffered testimony regarding whether there were any jobs that plaintiff could perform if she was restricted to light work with a sit/stand option, A.R., at 274-75, and that with that limitation, the VE opined that plaintiff could work as an unskilled cashier and unskilled inspector. A.R., at 274-75. The ALJ complied with requirements of SSR 83-12 as the judge consulted a vocational source regarding whether there were still jobs within the light occupational base that plaintiff could perform. While the transcript reveals that plaintiff's attorney cross examined the vocational expert as the impact of use of a cane, crying spells, and a different lifting limitation, plaintiff's counsel did not seek to clarify or ask any questions concerning plaintiff's sitting, standing and walking (other than to ask if use of a cane for walking to the job station would impact the opinion) as posed in the hypothetical. A.R., at 275-77. The court can find no merit to this aspect of plaintiff's assignment of error.

Plaintiff also argues that the ALJ erred by failing to specify the frequency with which plaintiff needed to alternate between sitting and standing. Neither of the rulings cited state that the ALJ must specify the frequency that a claimant needs to alternate positions if she has been restricted to light work. Such a specific determination is only required where the ALJ has limited plaintiff only to *sedentary work*. See SSR 96-9p.

Finally, plaintiff has argued that because of the alleged errors, the ALJ ultimately failed to pose a proper hypothetical to the ALJ. Hypothetical questions posed by an ALJ to a vocational expert must fully describe a plaintiff's impairments and accurately set forth the extent and duration of the claimant's pain, if any. Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978). Where the ALJ properly formulates her hypothetical to accurately reflect the condition and limitations of the claimant, the ALJ is entitled to afford the opinion of the vocational expert great weight. Shively v. Heckler, 739 F.2d 984 (4th Cir. 1984). Because plaintiff's conditions and limitations were accurately portrayed to the vocational expert, as outlined above, the ALJ did not fail to consider all the evidence, and her reliance on the opinion of the vocational expert that jobs were available to a person with plaintiff's limitations was proper.

E.  **Conclusion**

The undersigned has carefully reviewed the decision of the ALJ, the transcript of proceedings, plaintiff's motion and brief, the Commissioner's responsive pleading, and plaintiff's assignments of error. Review of the entire record reveals that the decision of the ALJ is supported by substantial evidence. See <u>Richardson v. Perales</u>, <u>supra</u>; <u>Hays v. Sullivan</u>, <u>supra</u>. Finding that there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," <u>Richardson v. Perales</u>, <u>supra</u>, the undersigned will deny plaintiff's Motion for Summary Judgment, grant the Commissioner's Motion for Summary Judgment, and, therefore, affirm the decision of the Commissioner.

Signed: May 17, 2007

Dennis L. Howell
United States Magistrate Judge